UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

  -vs-                                         Case number 11-20549
                                                  Honorable Julian Abele Cook, Jr.

ALEXANDER TAYLOR,

    Defendant.

_____/

ORDER

This case is based on an accusation by the Plaintiff, United States of America ("the Government") that the Defendant, Alexander Taylor, violated a federal statute (to wit, 18 U.S.C. § 922(g)(1)) which forbids felons from possessing firearms. On November 9, 2011, Taylor filed a motion which, if granted, would result in the suppression of the rifle that was found in his home and subsequently confiscated by a Ferndale, Michigan law enforcement officer.

It is Taylor's contention that the firearm was taken in violation of his fundamental rights under the Fourth Amendment to the United States Constitution. Hence, he urges the Court to enter an order that will suppress the admission of this evidence into any hearing or trial in this case.

I.

Around midnight on December 10, 2010, Taylor was handling a firearm which was accidentally discharged, causing him to sustain an injury to his foot. Immediately thereafter, he called 911 and requested emergency medical service. Ferndale police, fire, and medical services

1

were immediately dispatched to his home. According to Kenneth Jaklic - a Ferndale police officer - he responded to the emergency call a few minutes later, and, after finding the front door to be unlocked, entered the residence and found Taylor sitting on a living room couch and using a belt as a tourniquet for his injury. Upon entering the living room of the house, Jaklic saw an apparent wound on Taylor's foot with blood splattered on the floor. Taylor, after advising Jaklic that the wound had been self inflicted, indicated towards a rifle on the dining room table - approximately eight feet away - as the instrumentality which caused the injury.

Jaklic asserts that, thereafter, he conducted a "protective sweep" throughout the house prior to the entry by the other emergency responders. During the course of his "protective sweep," Jaklic found Taylor's twelve year old brother, Derrick, who was asleep in an adjoining room. At some point, Taylor's mother and girlfriend were called and encouraged to come to the house to take care of the youngster.

According to Jaklic, an emergency paramedic who had responded to the "911" call, informed him that he (1) had been called to the Taylor residence on November 23, 2010, (2) found Taylor in bed with a rifle while suffering from the complications of a seizure. Jaklic reports that the paramedic expressed the belief that the rifle - now on the dining room table- was the same weapon that he had seen in Taylor's possession on November 23rd. On the basis of this information, Jaklic (1) took possession of the rifle, and (2) made arrangements for Taylor to be transported to a local hospital.

II.

In his motion, Taylor contends that the rifle should not be admitted into evidence because, in his opinion, it had been seized in violation of the Fourth Amendment which provides, in part, that

"[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const., amend. IV. Several years ago, the Supreme Court declared that "searches and seizures inside a home without a warrant are presumptively unreasonable." *Groh v. Ramirez*, 540 U.S. 551, 559 (2004).

As a general rule, a warrant must be obtained in order for any law enforcement authorities to lawfully enter a home and seize evidence. However, the Supreme Court has identified a number of exceptions to this standard, such as the "plain-view" doctrine. In articulating the parameters of this doctrine, the Supreme Court has held that "if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993).

Over a decade ago, the Sixth Circuit declared that "[t]he plain view exception to the warrant requirement applies when the officer did not violate the Fourth Amendment in arriving at the place where the evidence could be plainly viewed, the item is in plain view, and the incriminating character of the evidence is immediately apparent." *U.S. v. Taylor*, 248 F.3d 506, 512 (6th. Cir.2001).

### III.

The Supreme Court has repeatedly held "that searches and seizures inside a home without a warrant are presumptively unreasonable." *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) (internal citation omitted). *See also Groh v. Ramirez*, 540 U.S. 551 (2004). However, this presumption can be overcome in certain situations because "[t]he ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Brigham City, supra,* at 403. The Supreme Court has found

3

several limited circumstances wherein a warrantless search of a home can be justified. *Id.* An example of such a "limited circumstance" can be found in the so-called "emergency aid" doctrine which authorizes "officers [to] enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Id.* at 403.

In *Brigham City*, police officers responded to an early morning caller who had complained of excessive noise from a loud party at a near by residence. When the police officers arrived, they (1) heard shouting from inside the dwelling, (2) observed youths consuming alcohol outside the house, and, after looking through a screen door and window, (3) were able to observe a fight in the kitchen. Thereafter, the police officers entered the house ostensibly to provide aid to those combatants who may have been injured and quell further violence. On the basis of these facts, the Supreme Court opined that "police may enter a home without a warrant when they have an objectively reasonable basis for believing that an occupant is seriously injured or imminently threatened with such injury." *Id.* at 400.

Similarly in *Michigan v. Fisher,* 130 S.Ct. 546 (2009), police officers responded to a complaint relating to the disturbance at a home. When the officers arrived at the site of the disturbance, they saw "considerable chaos," including a smashed truck, broken windows, and blood smeared on the truck and on the door of the home. *Id.* at 547. Looking through a window into the residence, they saw a man acting in a violent manner. *Id.* The Supreme Court, in finding this situation to be analogous to the facts in *Brigham City,* concluded that "under these circumstances, we found it plainly reasonable for the officers to enter the house and quell the violence, for they had an objectively reasonable basis for believing both that the injured adult might need help and that the violence in the kitchen was just beginning." *Id.* at 548 (internal quotations omitted).

Although the situations in *Brigham City* and *Fisher* presented far more violent and chaotic scenes than the case at bar, Jaklic had an objectively reasonable basis for believing that Taylor had been seriously injured - albeit a self-inflicted wound. Accepting the reported facts in this case to be true, the Court determines that this officer was lawfully in a position from which he could view the seized weapon.

In *Arizona v. Hicks*, 480 U.S. 321 (1987), the Supreme Court held that before the police may seize an item in plain view, they must - at a minimum - have probable cause to believe that the seized item is contraband or some reasonable evidence of criminality. In Michigan, it is a misdemeanor to recklessly discharge a firearm. Mich. Comp. Laws § 752.863a. On the basis of the statements by Taylor, along with obvious evidences of a wound and blood, Jaklic had probable cause to believe that the rifle in the dining room area was evidence of a criminal wrongdoing. Hence, in the opinion of the Court, the incriminating nature of the rifle on the dining room table was immediately apparent.

The Court must now turn to determine whether the subject weapon, which found by Jaklic in the dining room area - approximately eight feet from the living room where he and Taylor were in conversation - was in plain view. Based on the reported facts in this case and the applicable case law, the answer must be rendered in the affirmative. Clearly, Jaklic, who was able to observe the weapon in plain view, had a lawful right to seize o the rifle.

IV.

For the reasons stated above, Taylor's motion to suppress the rifle (Docket Entry 12) is denied.

IT IS SO ORDERED.

Date: January 17, 2012                              s/Julian Abele Cook, Jr.
                                                                                                          JULIAN ABELE COOK, JR.
                                                                                                          U.S. District Court Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on January 17, 2012

                                                                                                              s/ Kay Doaks
                                                                                                               Case Manager